**FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
                                                                           :        Chapter 13

In re:                                                           :

                                                                    :        Case No. 13-36334-cgm

     Errol Forde,                                        :

                                                                  :

                                          Debtor.     :

                                                                  :
---------------------------------------------------------------X

## MEMORANDUM DECISION REGARDING FUNDS HELD BY STATE COURT APPOINTED RECEIVER

**A P P E A R A N C E S :**

Genova & Malin, Attorneys
The Hampton Center
1136 Route 9
Wappingers Falls, NY 12590-4332
*Attorney for the Debtor*
       By: Andrea B. Malin, Esq.

Elizabeth A. Haas, Esq., PLLC
254 South Main Street, Suite 210
New City, New York 10956
*Attorney for Hillcrest Park*
       By: Elizabeth A. Haas, Esq.

**CECELIA G. MORRIS**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

       Before the Court are several motions containing many issues including a motion to avoid a lien against the debtor's real property held by his condominium association, a motion to quantify the condominium association's claim, a motion for turnover of the funds held by a state court appointed receiver, a motion to amend a so ordered stipulation between the debtor and the condominium association, and motions to approve fees of various professionals.  As each of these issues relates to and is dependent upon the outcome of one or more of the others, the Court

asked the parties to submit a joint statement containing agreed upon facts, issues, and evidence, as well as the order in which the parties wanted the issues to be decided. The Court now resolves the six questions contained in the parties joint statement.

## Jurisdiction

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a) and the Standing Order of Reference signed by Chief Judge Loretta A. Preska dated January 31, 2012. This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate).

## Background[1]

Prior to the filing a bankruptcy petition, Errol Forde (the "Debtor") became the owner of two condominium units in Hillcrest Park ("Hillcrest"), Unit 1A and Unit 6G. All of the owners of units in Hillcrest are subject to the condominium declaration, by-laws, and house rules of Hillcrest (the "Condominium Documents"). Joint Statement, ECF No. 123, Ex's. A-C. Prior to filing the case, the Debtor defaulted in paying obligations owed to Hillcrest under the Condominium Documents. As a result of the Debtor's failure to pay obligations due under the Condominium Documents, Hillcrest filed three notices of lien relative to Unit 1A and two notices of lien relative to Unit 6G. Hillcrest subsequently filed a summons and complaint against the Debtor and notices of pendency against each unit.

Hillcrest obtained an Order of Reference and Appointment of Receiver for each unit, which appointed Kenneth Gould as the Receiver (the "Receiver"). Hillcrest obtained a judgment of foreclosure against each unit, and a sale was scheduled for each unit.

---

[1] Unless otherwise indicated, all ECF citations are to *In re Forde*, No. 13-36334 and all facts without a citation are stipulated in the parties' Joint Statement, ECF No. 123.

On December 1, 2010, the Debtor filed a chapter 13 petition with this Court bearing case number 10-24487 (the "First Case"). The First Case was dismissed by order dated March 14, 2013. During the First Case, prior counsel for the Debtor and counsel for Hillcrest agreed that the Receiver would continue to collect rent pursuant to the State Court Orders of Reference. The Receiver collected rents during the First Case and continued to collect rents after the First Case was dismissed. Hillcrest did not make an application for an award of attorneys' fees during the First Case. Upon dismissal of the First Case, Hillcrest filed an application in state court (the "State Court Action") to obtain release of the proceeds held by the Receiver. Prior to the state court making a decision on the application, the Debtor filed a second bankruptcy case. The state court in the State Court Action did not award attorneys' fees to Hillcrest as the action was stayed by the second bankruptcy case.

On June 7, 2013, the Debtor filed a chapter 13 petition with this Court (the "Second Case"). Upon the filing of the Second Case, the Debtor, through his counsel, filed a motion to extend the automatic stay. Hillcrest filed opposition to that motion. The Court granted the Debtor an extension of the automatic stay and, in an effort to resolve the issues set forth herein, the parties executed a stipulation ("Stipulation"), which was intended to relieve the Receiver of his obligations under the state court orders, to segregate the funds being held by the Receiver and create a mechanism by which each party would make its claim, in this Court, to the funds held by the Receiver.

The Receiver collected $66,557.17 in total. Pursuant to the terms of the Stipulation, counsel for Hillcrest is holding the sum of $56,500.00, while counsel for Debtor is holding the remaining $10,057.17.

To date, and throughout the First Case, the Debtor remained substantially current on the fees and assessments owed to Hillcrest under the Condominium Documents. The parties agree that the market analysis of Unit 1A, filed as exhibit M to the Joint Statement, and the market analysis of Unit 6G, filed as exhibit T to the Joint Statement, accurately represent the value of the condominium units and are to be employed for the purpose of valuation herein.

On August 12, 2013, Hillcrest filed an objection to confirmation of the Debtor's chapter 13 plan. ECF No. 60. On August 15, 2013, Hillcrest filed a *Motion to Quantify the Prepetition Claim of Hillcrest Park Condominium Group 5, and for an Order Paying a Prepetition Referee and Receiver, and Related Relief* ("Motion to Quantify"). ECF No. 43. On November 14, 2013, Debtor filed a motion to avoid Hillcrest's lien. ECF No. 73. On November 20, 2013, Debtor filed opposition to Hillcrest's Motion to Quantify. ECF No. 81. On January 17, 2014, Hillcrest filed opposition to Debtor's motion to avoid its lien. ECF No. 95. On January 20, 2014, Hillcrest filed a reply to Debtor's opposition to its Motion to Quantify. ECF No. 96. On February 19, 2014, Debtor filed a response to both of Hillcrest's motions. ECF No. 106.

At the hearing held on February 25, 2014, the Court requested that Debtor and Hillcrest create a joint document summarizing the facts, issues, and law relevant to each position. On March 14, 2014, the parties filed a joint statement and twenty-five exhibits ("Joint Statement"). Joint Statement, ECF No. 123.

## Discussion

In the Joint Statement, the parties asked the Court to decide the following six issues:

1) To what extent did Hillcrest perfect its lien against the condominium units prior to the Debtor's filing of his second chapter 13 case?

2) To the extent that Hillcrest holds perfected liens against the Debtor's condominium units, are the statutory liens created thereby subject to being voided and reclassified as general unsecured debts under 11 U.S.C. §§ 506(a),(d), 1322(b) and Federal Rule of Bankruptcy Procedure 3007?

3) Does Hillcrest have a claim or a secured position against the money being held by the Receiver?

4) If Hillcrest does have an interest in the funds held by the Receiver, is that interest subordinate to the first mortgagee's interest?

5) May Hillcrest now amend its claim to exceed the amount to which it was limited through the parties' "So Ordered" stipulation of settlement filed with this Court?

6) Should the professionals be awarded the fees requested in Hillcrest's application to quantify its claim?

The Court addresses each of these issues in order.

*1.     To what extent did Hillcrest perfect its lien against the condominium units prior to the Debtor's filing of his second chapter 13 case?*

On September 26, 2013, Hillcrest filed a claim in the sum of $63,003.82 as a secured claim. Proof of Claim, No. 13-36334, Claim No. 6-1. Debtor argues that the proof of claim is not supported by liens actually filed in Westchester County nor is it supported by the Judgment of Foreclosure entered by Westchester County Supreme Court. *See* Joint Statement 8. Debtor argues that for liens to exist they must be recorded in the county clerk's office. *Id.* at 6. Debtor argues that Hillcrest is entitled only to the amount the liens that were part of the September 5, 2010 judgment: on Unit 1A, $10,267.32 plus interest at 9% per year from June 23, 2010 (totaling $11,754.00); and on Unit 6G, $8,335.15 plus interest at 9% per year from June 23, 2010 (totaling

$9,575.97). *Id.* at 8. Debtor relies on New York Real Property Law §§ 339-z and 399aa for this argument. *Id.* at 7.

Hillcrest argues that under New York Real Property Law § 339-z, the board of managers of a condominium has a lien for unpaid common charges. *Id.* at 9. The lien is not self-executing and a condominium must file a notice of lien in the appropriate recording offices, pursuant to Real Property Law § 339-aa. *Id.* Hillcrest argues that a lien so recorded is effective for six years after the date of filing and continues until all sums secured, with interest, have been paid. *Id.* at 9-10. Hillcrest argues that the condominium has a right to recover attorneys' fees and related charges which are contemplated by the Condominium Documents in an action to foreclose for nonpayment of common charges. *Id.* at 11. Hillcrest's right to recover such fees is found in the By-Laws. *Id.* at 10.

Hillcrest argues that once a condominium files a notice of lien, under New York Real Property Law § 339-aa, the lien extends to subsequently accruing unpaid common charges and accrued interest up to the time of sale or conveyance. *Id.* Hillcrest asserts that the liens in question here state that interest shall continue to accrue until payment is made in full and the lien is satisfied. *Id.* Hillcrest believes that its liens include the fees and costs for litigation in the Debtor's First Case, the Westchester County case, and this Second Case. *Id.* at 11.

Under New York Real Property Law § 339-z, a condominium is given a lien for unpaid common charges:

> The board of managers, on behalf of the unit owners, shall have a lien on each unit for the unpaid common charges thereof, together with interest thereon, prior to all other liens except only (i) liens for taxes on the unit in favor of any assessing unit, school district, special district, county or other taxing unit, (ii) all sums unpaid on a first mortgage of record, and (iii) all sums unpaid on a subordinate mortgage of record held by the New York job development authority, the New York state urban development corporation, the division of housing and community renewal, the housing trust fund corporation, the New York city

>   housing development corporation, or in a city having a population of one million
>   or more, the department of housing, preservation and development.

N.Y. Real Prop. Law § 339-z (McKinney's 2014).  The lien is not self-executing. *In re Eatman*, 182 B.R. 386, 391 (Bankr. S.D.N.Y. 1995). To become effective, the condominium must file a notice of lien in the appropriate recording office. *Id.*  New York Real Property law § 339-aa, which governs liens for common charges and their duration, states in relevant part:

>   The lien provided for in [§ 339-z] shall be effective from and after the filing in the office of the recording officer in which the declaration is filed a verified notice of lien . . . ; and shall continue in effect until all sums secured thereby, with the interest thereon, shall have been fully paid or until expiration six years from the date of filing, whichever occurs sooner.

N.Y. Real Prop. Law § 339-aa (McKinney's 2014).  Once the lien is filed, it extends to accruing unpaid common charges and accrued interest.  *See Eatman*, 182 B.R. at 391; *Washington Fed. Sav. & Loan Ass'n v. Schneider*, 408 N.Y.S.2d 588, 590-591 (N.Y. Sup. Ct. 1978).

New York Real Property Law defines "common charges" as "each unit's proportionate share of the common expenses in accordance with its common interest."  N.Y. Real Prop. Law § 339-e(2) (McKinney's 2014).  "Common expenses" are defined by the statute as "(a) expenses of operation of the property, and (b) all sums designated common expenses by or pursuant to the provisions of this article, the declaration or the by-laws."  *Id.* § 339-e(4).  Thus, common charges do not automatically include attorneys' fees, unless provided in the declaration or the condominium's by-laws.

Hillcrest relies on Article VI section 6[2] for its right to recover attorneys' fees.  Section 6 of Article VI only permits attorneys' fees to be sought in an action to recover common charges;

---

[2] This section, labeled "Default in Payment of Common Charges," states:

>   In the event any Unit Owner shall fail to make prompt payment of his common charges, such Unit Owner shall be obligated to pay interest at the highest legal rate on such unpaid common charges computed from the due date thereof, together with all expenses, including attorneys' fees, paid or

it does not make these fees "common expenses," meaning attorneys' fees do not automatically become part of Hillcrest's lien under New York Real Property Law § 339-aa. *See Eatman*, 182 B.R. at 391 ("[T]he lien does not, at least on its face, extend to attorney's fees."). Similarly, the by-laws do not define "late charges" as common expenses and, as such, late charges are not automatically part of Hillcrest's lien.[3]

However, the Judgment of Foreclosure for each unit permits Hillcrest to assert these charges as part of its lien. Each Judgment of Foreclosure states:

> the Referee shall pay to Plaintiff a sum equal to the aggregate of all other amounts which the Plaintiff have paid *or may hereafter be required to pay to protect its lien* or preserve the premises in accordance with the provisions of the condominium Declaration and By-Laws, and the same so paid shall be added to the sum otherwise due to the Plaintiff pursuant to the Plaintiff's claims herein and be deemed secured by said lien, Declaration and By-Laws as therein provided and adjudged a valid lien on the premises[.]

Joint Statement, Ex. K at 7, Ex. R at 7 (emphasis added). The Court is bound by the state court's judgments of foreclosure, which permits Hillcrest to add to its liens "all other amounts" that Hillcrest "may hereafter be required to pay." *In re Jones*, 2011 WL 917849, at * 5 (Bankr. D. Mass. Mar. 15, 2011) ("[W]here a judgment is not invalid—does not, for fraud or want of

---

> incurred by the Board of Managers in any proceeding brought to collect such unpaid Common Charges. The Board of Managers shall have the right and obligation to attempt to recover such common charges, together with interest thereon, and the expenses of the proceeding, including attorneys' fees, in an action to recover the same brought against such Unit Owner, or by foreclosure of the lien on such Unit granted by Section 339-l of the Real Property Law of the State of New York, in the manner provided in Section 339-aa thereof.

Joint Statement, Ex B. at 14.

[3] The by-laws define common expenses as follows:

> The common expenses shall include, without limitation, the cost of all insurance premiums on all policies of insurance required to be or which have been obtained by the Board of Managers pursuant to the provisions of Section 2 Article VI and the fees and disbursements of the Insurance Trustee." By-laws Liber 7503 page 288. The by-laws go on to state that "[t]he common expenses may also include such amounts as the Board of Managers may deem necessary for customary or extraordinary legal expenses incurred with respect to the Condominium Property.

Joint Statement, Ex. B at 11.

jurisdiction, lack the force of a judgment—a bankruptcy court may not reexamine the issues it determined.") (citing *Heiser v. Woodruff*, 327 U.S. 726, 737 (1946)).  Such amounts include attorneys' fees incurred for litigation in the Debtor's first and second bankruptcy.  *See Jones*, 2011 WL 917849, at *7 ("In view of the fact that the Debtor's bankruptcy filings interrupted the Trust's attempt to enforce its lien by foreclosure, the Trust's and the firm's efforts to deal with the bankruptcy filing clearly do relate to enforcement of the lien.").  Thus, Hillcrest's liens include post-judgment common charges and interest, plus any other expenses and attorneys' fees that it subsequently incurred.

**2.    To the extent that Hillcrest holds perfected liens against the Debtor's condominium units, are the statutory liens created thereby subject to being voided and reclassified as general unsecured debts under 11 U.S.C. §§ 506(a),(d), 1322(b) and Federal Rule of Bankruptcy Procedure 3007?**

Debtor argues that Hillcrest's statutory liens may be voided pursuant to 11 U.S.C. § 506.  Joint Statement 11.  Debtor and Hillcrest have agreed that Unit 1A has an appraised value of $71,937.00 and a first mortgage lien in the amount of $251,402.93.  *Id.* at 12.  The parties have also agreed that Unit 6G has a value of $60,833.00 and a first mortgage of $152,476.90.  *Id.*  Debtor argues that these liens should be valued at $0 and that the anti-modification provision of 11 U.S.C. §1322(b) does not apply as the liens are on non-residential property.  *Id.* at 12-14.  Debtor asks the Court to reclassify these liens as general unsecured claims.

Hillcrest argues that under New York Real Property law interest accrues until payment is made in full.  *Id.* at 16-17.  Hillcrest relies on *In re Raymond*, 129 B.R. 354 (Bankr. S.D.N.Y. 1991) and argues that its statutory liens cannot be "stripped off" under § 506(a) and (d).  *Id.* at 16-18.  Hillcrest also argues that allowing the strip off of its lien would be unfair to the 150 other condominium owners who are affected by this ruling. *Id.* at 18.

In *In re Plummer*, the court allowed a debtor to strip off a condo association's lien and stated that

> no matter the specific definitional category in which condominium assessment liens fall, there is no question but that an assessment lien is a charge against the condominium owner's property to secure performance of the owner's obligation to pay assessments. As such, condominium assessment liens squarely fall within the Bankruptcy Code's definition of liens and are subject to the application of Bankruptcy Code section 506. To hold otherwise would be to give condominium associations a special status under the bankruptcy laws that is not set forth in the Bankruptcy Code.

484 B.R. 882, 889 (Bankr. M.D. Fla. 2013); *see also In re Aliu-Otokiti*, 2013 WL 1163782, at *3 (Bankr. M.D. Fla. Mar. 19, 2013) (holding that a condo association's second-priority lien was unsecured and subject to avoidance under § 506).

Hillcrest argues that *In re Raymond* is analogous to the case at hand. The Court disagrees. In *Raymond*, the court determined that condo association fees that accrued post-discharge were non-dischargeable. 129 B.R. 354, 365 (Bankr. S.D.N.Y. 1991) (concluding that "Sutton did not violate the discharge injunction of Code § 524(d) through its attempt to collect a debt for condominium common charges, assessments and late fees which accrued subsequent to the Debtors' discharge."). *Raymond* did not address the facts at hand, as it was not interpreting § 506.

The Court agrees with the *Plummer* court's interpretation of § 506, and believes that Hillcrest's lien should be reclassified as unsecured under § 506. Section 506(d) is clear; it applies to "liens" generally and does not carve out an exception for statutory liens. 11 U.S.C. § 506(d) ("To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void . . . ."). The anti-modification provision of § 1322(b)(2) does not apply here as these condominiums are not the Debtor's principal residence. 11 U.S.C. § 1322(b)(2)

("[T]he plan may . . . modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence . . . .").

Hillcrest's claim is wholly unsecured under § 506 and may be "stripped off." The Court is not persuaded that its outcome should be modified due to the effect on other condominium owners. Those owners took the risk that another owner could file bankruptcy, just as every creditor does.

### 3.    *Does Hillcrest have a claim or a secured position against the money being held by the Receiver?*

Debtor argues that Hillcrest does not have a security interest in the funds held by the Receiver as it failed to perfect its interest through the pending state court proceeding prior to the bankruptcy filing. Joint Statement 18. Debtor argues that the rents being held by the Receiver should be applied to the mortgage and real property taxes due and owing on the property. *Id.*

Hillcrest argues that its claim is secured against Debtor's real property and against the funds collected by the Receiver. *Id.* at 24. Hillcrest relies on the orders appointing the Receiver and the Judgments of Foreclosure. *Id.*

Section 506(a) of the Bankruptcy Code "describes the extent to which an allowed claim is to be treated as a secured claim for purposes of the Code, as well as how a secured claim is to be valued" and is the starting point for any determination as to whether Hillcrest has a secured claim against funds held by the Receiver in this case. *See* Collier on Bankruptcy ¶ 506.01 (16th ed. 2014); 11 U.S.C. § 506. In determining whether a creditor holds a secured claim, a bankruptcy court should first decide whether the creditor is secured as a matter of nonbankruptcy law; in other words, the issue is whether Hillcrest has an *in rem* right under nonbankruptcy law to collect the funds held by the Receiver ahead of general unsecured creditors. *Id.*

> The term "lien" as used in section 506(a) is defined broadly in section 101 to mean any "charge against or interest in property to secure payment of a debt or performance of an obligation." Consistent with this definition, a claim may be a secured claim regardless of whether the relevant lien was created by agreement, statute, common law, equity, or judicial process.

*See id.* at ¶ 506.03.

Hillcrest relies on the "seventh decretal paragraph" of each of the Judgments of Foreclosure, which states:

> *[T]he Referee shall pay to Plaintiff a sum equal to the aggregate of all other amounts which the Plaintiff have paid or may hereafter be required to pay to protect its lien or preserve the premises* in accordance with the provisions of the condominium Declaration and By-Laws, and the same so paid shall be added to the sum otherwise due to the Plaintiff pursuant to the Plaintiff's claims herein and be deemed secured by said lien, Declaration and By-Laws as therein provided and adjudged a valid lien on the premises.

Joint Statement, Ex. K, at 7, Ex. R, at 7 (emphasis added). These provisions do appear to give Hillcrest an interest in the funds above other general unsecured creditors. The state court's decrees, in the Judgments of Foreclosure, do not condition the payment upon a sale, and the Court is bound by that determination. *Id.*; *see Jones*, 2011 WL 917849, at * 5 ("[W]here a judgment is not invalid—does not, for fraud or want of jurisdiction, lack the force of a judgment—a bankruptcy court may not reexamine the issues it determined.") (citing *Heiser v. Woodruff*, 327 U.S. 726, 737 (1946)). Even if there were conditions on the payment, Hillcrest's lien would be inchoate and entitled to secured status. *Vienna Park Props. v. United Postal Sav. Ass'n (In re Vienna Park Props.)*, 976 F.2d 106, 113 (2d Cir. 1992). Hillcrest is secured in the funds held by the Receiver and is entitled to file a secured claim on that basis.

Hillcrest is not entitled to deduct its secured interest in the funds collected by the Receiver prior to turning them over to the estate. "Section 543(a) and (b) of the Bankruptcy Code mandates a 'custodian' to turn over to the bankruptcy trustee or debtor-in-possession any

property of the debtor that is in the possession, custody or control of the non-bank custodian."[4] *Dill v. Dime Sav. Bank, FSB (In re Dill)*, 163 B.R. 221, 225 (E.D.N.Y. 1994). The section makes no mention of a receiver deducting amounts owed to creditors from the property in his possession.

The rents are most likely "cash collateral" and subject to § 363. *In re Goode*, 235 B.R. 584, 589 (Bankr. E.D. Tex. 1999) ("Under the provisions of 11 U.S.C. § 1304(b), a Chapter 13 debtor engaged in business may exercise the powers of a trustee under § 363(c) of the Bankruptcy Code to seek authorization to utilize the cash collateral of a creditor. Because actual cash in hand is obviously of great value to a secured creditor, such a debtor is required to segregate and account for any cash collateral in his possession and is further prohibited from using such cash collateral in any manner, unless all secured creditors having an interest in such cash consent to such use or the court authorizes such use over the creditor's objection, after notice and a hearing."). The parties have not raised this issue and, as such, the Court will make no determination on whether the rents constitute cash collateral or whether the Debtor may use these funds. Any funds turned over by the Receiver shall be escrowed pending further determination of this Court.

*4.     If Hillcrest does have an interest in the funds held by the Receiver, is that interest subordinate to the first mortgagee's interest?*

The Judgments of Foreclosure do not subordinate Hillcrest's interest in the funds to the first mortgagee's interest. Joint Statement, Ex. K, at 8, Ex. R, at 8. This is consistent with the New York Real Property law, which subordinates a condominium's lien for unpaid common charges against the unit to that of the first mortgage holder. *See* N.Y. Real Prop. Law § 339-z (McKinney's 2014). The law makes no mention of the first mortgagee's lien on rents collected

---

[4] There has been no assertion that the funds collected by the Receiver are not property of the Debtor and as such, the Court assumes without deciding that they are.

Page **13** of **18**

by the Receiver. *Id.* In any case, the state court would have considered these issues in making its determination and could have ordered the Receiver to pay the first mortgage.

The Court is persuaded by *U.S. Bank National Association v. Culver*, in which a state court considered "whether the cost of the condominium common charges accruing while a foreclosure action is pending be paid without first applying the rents to the reduction of the first mortgage." 2010 WL 2326598, at *1 (N.Y. Sup. Ct. June 8, 2010). In *Culver*, the board's lien on the real property was "underwater" and would have been extinguished once a foreclosure sale was completed by the first mortgage holder. *Id.* To protect its rights, it sought appointment of a receiver of rents on the unit. *Id.* Ultimately, the court permitted appointment of the receiver over the opposition of the first mortgage holder and allowed the condo association to collect on its rents, despite the first mortgage lien. *Id.* at *2-*3.

The Court will enforce the judgment as written and will not subordinate Hillcrest's security interest in the funds to the interests of the first mortgage holder. *See Jones*, 2011 WL 917849, at *5.

### 5.    *May Hillcrest now amend its claim to exceed the amount to which it was limited through the parties' "So Ordered" stipulation of settlement filed with this Court?*

On August 1, 2013, the Court "so ordered" the Stipulation between Hillcrest and the Debtor. Joint Statement, Ex. D. The Stipulation states: "Whereas, Hillcrest Park represents that it will seek an application . . . for a determination quantifying the amount sought by Hillcrest Park, including counsel fees, for obligations relating to both Investment Properties in a sum no greater than $50,000.00." *Id.* at 3-4. Hillcrest moves to modify the Stipulation in order to file a proof of claim in the amount of $62,889.06 and asks the Court to quantify its claim in that amount. Joint Statement 34-36. Debtor argues that there are no grounds to vacate or modify the Stipulation. *Id.* at 31.

Hillcrest argues that it made a mistake in calculations of its numbers and should be permitted to correct its mistake. *Id.* at 35. Hillcrest argues that the miscalculation arises from a change in management and an incorrect computation of late charges and extraneous expenses. *Id.* Hillcrest's treasurer is prepared to testify at an evidentiary hearing on this matter. *Id.* Hillcrest argues that this is the type of "mistake or inadvertence" contemplated by Federal Rule of Civil Procedure 60(b). *Id.*

A stipulation is an enforceable contract. *See In re Royster Co.*, 132 B.R. 684, 687 (Bankr. S.D.N.Y. 1991). Where the terms are unambiguous, the Court must enforce a stipulation as written. *Id.* Stipulations may be modified by Courts only where necessary to prevent a "manifest injustice." *Chem. Leaman Tank Lines, Inc. v. Aetna Cas. & Sur.*, 71 F. Supp. 2d 394, 397-99 (D. N.J. 1999) ("Indeed, if substantial evidence . . . were all that was required to disregard it, the purpose of stipulations would be severely undercut . . . . If a party could be relieved of a stipulation on a mere showing of substantial contrary evidence, litigants could not rely on stipulations of fact and would have to be fully prepared to put on their proof.").

The result is no different under Federal Rule of Civil Procedure 60(b). As the Second Circuit has stated:

> An argument based on hindsight regarding how the movant would have preferred to have argued its case does not provide grounds for Rule 60(b) relief, nor does the failure to interpose a defense that could have been presented earlier, nor does the failure to marshall [sic] all known facts . . . .

*Paddington Partners v. Bouchard*, 34 F.3d 1132, 1147 (2d Cir. 1994) (internal citations omitted). Hillcrest is limited to a maximum of $50,000 for its claim.

*6.    Should the professionals be awarded the fees requested in Hillcrest's application to quantify its claim?*

**a) <u>State Court Attorney</u>**

Hillcrest is seeking fees for its state court counsel, Fred G. Quagliato. Attached to the motion are his affirmation and time records. Joint Statement, Ex. W. Any fees awarded in the Judgments of Foreclosure are allowed to be included as part of Hillcrest's proof of claim under the doctrine of full faith and credit and, as the Judgment of Foreclosure allowed Hillcrest to continue to accrue attorneys' fees necessary to protect its lien, it follows that Hillcrest should be able to claim its pre-petition attorneys' fees as part of its secured claim so long as they are reasonable. *See Kittel v. First Union Nat'l Bank (In re Kittel)*, 2002 WL 924619, at *6 (B.A.P. 10th Cir. 2002) ("As to the Bank's prepetition fees and expenses, the bankruptcy court rightly recognized and accorded full faith and credit to the previously-granted state court judgment, which granted to the Bank not only fees for the foreclosure case, but also fees that might prospectively be incurred in the defense of the Bank's lien in a bankruptcy case.").

The Court has already determined in, issue number one and number three *supra*, that Hillcrest is entitled to attorneys' fees as part of its claim. The Court has also determined that such claim is limited to $50,000, pursuant to the Stipulation.

Debtor's analysis pursuant to § 327 and § 330 is not relevant to this determination as the fees have previously been awarded by the state court. *See In re Sun "N Fun Waterpark LLC*, 408 B.R. 361, 373 (B.A.P. 10th Cir. 2009) ("Rule 2016 is inapplicable where a secured creditor is seeking recovery of prepetition fees."). Hillcrest is entitled to include all of its pre-petition[5] state court attorneys' fees in its proof of claim as same were awarded by the state court pursuant to the

---

[5] For clarity's sake, the Court uses prepetition in this context to mean fees incurred prior to the filing of this bankruptcy case.

Page **16** of **18**

Judgments of Foreclosure. Those fees that were incurred post-judgment may be reviewed for excessiveness as part of the claims allowance process.

### b) Bankruptcy Attorney

Hillcrest is seeking fees for its bankruptcy counsel, Elizabeth Haas, in connection with the First and Second bankruptcy. The Court has already determined that Hillcrest is entitled to attorneys' fees as part of its claim. For the same reasons stated in the above section, Hillcrest is entitled to pre-petition attorney's fees for its bankruptcy counsel. These fees may only be challenged for excessiveness, duplication, etc., as part of the claims allowance process.

### c) Receiver

Hillcrest is seeking an order approving fees for the Receiver in the amount of $5,285, plus reimbursement of actual and necessary out-of-pocket expenses in the amount of $204.06. Hillcrest is seeking to have these funds paid out of the funds collected by the Receiver, which are currently being escrowed. Debtor has objected to the reasonableness of this claim.

Receivers are compensated pursuant to § 543(c). Section 543(c)(2) states: "The court, after notice and a hearing, shall . . . provide for the payment of reasonable compensation for services rendered and costs and expenses incurred by such custodian." If allowed, the Receiver's fees and expenses are entitled to be treated as an administrative expense pursuant to § 503(b)(3)(E). It is clear from the statute that Receivers who are excused from service by the Bankruptcy Court are entitled to fees for pre-petition services. *In re Youngquist*, 501 B.R. 877, 888 (Bankr. D. Kan. 2013). The only standard provided by § 543(c)(2) is reasonableness. The determination of what is reasonable is a determination of federal, not state, law. *Id.* at 891. The factors for determining reasonableness are similar to those used in considering other attorneys' fees and include: the time and labor expended by the custodian; the benefit of the custodian's

services to the debtor and the estate; the size and/or complexity of the estate; what the custodian would have received if he or she had been appointed as trustee for the debtor, and the quality of the custodian's services. *Id.* The Receiver may file a claim for his fees pursuant to § 503(b)(3)(E) and Debtor will have the opportunity to object.

### d) Referee

The Referee, Barbara Lerman, is seeking $500 for each case, in accordance with the Westchester Supreme Court's "Order of Reference and Appointment of Receiver of Rents." Debtor does not appear to contest this fee. The Referee may file a claim for this amount.

### Conclusion

For the foregoing reasons, the Court grants the following relief: as to issue number one, Hillcrest's liens include post-judgment common charges and interest, plus any other expenses and attorneys' fees that it subsequently incurred; as to issue number two, Hillcrest's liens against Debtor's real property may be voided; as to issue number three, Hillcrest has a claim secured by the money being held by the Receiver; as to issue number four, Hillcrest's interest in the funds held by the Receiver is not subordinate to the first mortgage lien; as to issue number five, Hillcrest is bound by the stipulation and may not assert a claim above $50,000; as to issue number six, Hillcrest's claim may include attorneys' fees subject to the limitations provided for in this decision, the Receiver and Referee may file claims for their fees. Additionally, the funds held by the Receiver shall be turned over to the estate and held in escrow pending subsequent orders of this Court. Debtor shall settle and order consistent with this Memorandum Decision on counsel for Hillcrest.

Dated: Poughkeepsie, New York
    April 9, 2014          /s/ Cecelia G. Morris
                                CECELIA G. MORRIS
                                CHIEF UNITED STATES BANKRUPTCY JUDGE